**PISTACHIO GROUP OF THE ASSOCIATION OF FOOD INDUSTRIES, INC., et al., Plaintiffs,**

v.

**The UNITED STATES, Defendant,**

**and**

**California Pistachio Commission, et al., Defendants–Intervenors.**

**Court No. 86–08–01037.**

United States Court of International Trade.

May 17, 1988.

Harris & Berg (Cheryl Ellsworth), Washington, D.C., for plaintiffs.

John R. Bolton, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch (Platte B. Moring, III), Civil Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

Fried, Frank, Harris, Shriver & Jacobson (David E. Birenbaum and Alan Kashdan), Washington, D.C., for defendants-intervenors.

**OPINION**

RESTANI, Judge:

Plaintiffs brought this action challenging the final affirmative antidumping duty determination by the United States Department of Commerce, International Trade Administration (ITA) in *Certain In–Shell Pistachios from Iran.* 51 Fed.Reg. 18,919 (May 23, 1986). In an opinion on plaintiffs' motion for judgment upon the agency record under Rule 56.1 of the Rules of this Court, the action was remanded to ITA to determine whether its utilization of the exchange rate set by the Federal Reserve Bank of New York (N.Y.Fed) pursuant to ITA's request improperly creates artificial dumping margins in this case. *Pistachio Group of the Ass'n. of Food Indus. v. United States,* 11 CIT ——, 671 F.Supp. 31

(1987). Plaintiffs presently challenge ITA's remand results.[1]

## DISCUSSION

The parties agree that had ITA been able to verify that an exchange rate other than the "official rate" of 90 rials to the dollar was used in export transactions involving the subject merchandise, it would have been possible to conclude that artificial dumping margins were created by utilization of the official rate certified by the N.Y.Fed. Because of respondent's lack of cooperation in this case, however, verifiable information of this sort was never made available. In the absence of this information, ITA proceeded to make its determination on the basis of the best information available pursuant to statute and ITA regulations.[2] ITA sought information from the parties in this case which would allow it to make an independent determination of the accuracy of the official exchange rate of 90 rials to the dollar provided by the N.Y. Fed.[3]

Plaintiffs presently challenge ITA's decision to rely on the official rate as best information available. Plaintiffs argue that this court must reject ITA's reliance on the official rate because there is no evidence on record indicating that any foreign exchange transactions have actually occurred at this rate. Plaintiffs point to evidence, which they have placed in the record, indicating that foreign exchange transactions occurred in Iran during the period of investigation at a substantially higher free market rate of approximately 650 rials to the dollar. Plaintiffs argue that ITA's disregard of actual market transactions in its determination of an exchange rate " 'so distorts or detracts from' the evidence in favor of utilizing the 'official' rate, as to render the determination unsupported by substantial evidence on the record." [4] Plaintiffs' Brief at 7 (citation omitted).

In the alternative, plaintiffs suggest that ITA should have utilized an exchange rate of approximately 400 rials to the dollar which they claim is available to pistachio

---

**1.** Plaintiffs have also moved to strike certain portions of, and an attachment to, defendant-intervenors' response to plaintiffs' brief. Defendant has consented to this motion. Because the information in question was not placed in the record "during the course of the administrative proceeding," it is outside the scope of review and was not considered by the court in arriving at its decision. 19 U.S.C. § 1516a(b)(2)(A) (1982).

**2.** ITA is required to meet the verification and best information available requirements of the statute which provides in pertinent part:

The administering authority shall verify all information relied upon in making—
(1) a final determination in an investigation
... If the administering authority is unable to verify the accuracy of the information submitted, it shall use the best information available to it as the basis for its action, which may include, ... the information submitted in support of the petition.
... [W]henever a party or any other person refuses or is unable to produce information requested in a timely manner and in the form required, or otherwise significantly impedes an investigation [the administering authority shall] use the best information otherwise available.

19 U.S.C. § 1677e (1982 & Supp. IV 1986).
ITA's regulation states in part:

Whenever information cannot be satisfactorily verified, or is not submitted in a timely fashion or in the form required, the submitter of the information will be notified [and] the affected determination will be made on the basis of the best information then otherwise available which may include the information submitted in support of the petition.... Where a party to the proceeding refuses to provide requested information, that fact may be taken into account in determining what is the best available information.

19 C.F.R. § 353.51(b) (1987).

**3.** Respondent is not a party to this action.

**4.** Plaintiffs also argue that ITA's exchange rate determination in this case is inconsistent with that in the companion countervailing duty determination, *In–Shell Pistachios from Iran,* 51 Fed.Reg. 8,344 (Mar. 11, 1986). Plaintiffs' Reply Brief at 9. In that determination, ITA did state that "a pistachio exporter may sell retained foreign exchange at the free market rate to any person in Iran with a need for foreign currency." 51 Fed.Reg. at 8,345. In making that statement, however, ITA was referring to what exporters may do with foreign exchange retained as a result of a ten percent bounty or grant which they receive in addition to the official exchange rate. *Id.* ITA made no general finding that pistachio exporters otherwise converted foreign exchange at the free market rate.

exporters who choose to convert export proceeds through government channels. According to plaintiffs, exporters who choose to remit foreign exchange to an authorized bank receive the official rate of exchange plus a "wariznameh," or foreign exchange certificate, which entitles the bearer to an allocation of foreign exchange. The wariznamehs are transferable, and evidently had a market value of approximately 240 to 360 rials per dollar during the investigation period. Plaintiffs' Brief at 10–11.

On remand, ITA was presented with conflicting evidence regarding exchange rates and exchange arrangements which existed in Iran during the period of investigation. Defendant-intervenors presented information originally submitted by the government of Iran in ITA's countervailing duty investigation stating that there is only one legal rate of exchange in Iran (approximately 90 rials to the dollar) and that "[t]here is no different exchange rate which applies to purchasing goods for import, for remitting foreign exchange gained from export sales, or to any other transaction." Remand Doc. No. 4, at app. A. This information also indicates that the government of Iran maintains strict controls over export transactions and foreign exchange. *Id.* at app. E. Additionally, it appears that the International Monetary Fund cites the official rate in its publications, *id.* at ex. B, and that Iranian banks have quoted this official exchange rate for foreign exchange dealings.[5] Public Record (PR) No. 56, at ex. L.

Plaintiffs, on the other hand, submitted data from various sources indicating the availability of free market exchange rates ranging from 600–700 rials to the dollar during the period of investigation. Re-

mand Doc. No. 3. Plaintiffs also submitted information, including the affidavits of six Iranian exporters of pistachio nuts, indicating the existence of the wariznameh exchange mechanism.

ITA "may exercise discretion in determining what is the best information available when an exporter or manufacturer has failed to supply requested information." *Chemical Prods. Corp. v. United States,* 10 CIT ——, 645 F.Supp. 289, 295, *remand order vacated,* 651 F.Supp. 1449 (1986). ITA's reliance on best information available, however, "does not relieve the Court of its task of deciding whether the information relied on as the best evidence provides substantial evidence on the record in support of ITA's determination." *Toho Titanium Co. v. United States,* 11 CIT ——, 670 F.Supp. 1019, 1022 (1987) (citing *Atlantic Sugar, Ltd. v. United States,* 744 F.2d 1556, 1561 (Fed.Cir.1984)).

In the remand results, ITA acknowledged that after reviewing the information submitted, it had "reason to believe that foreign ex[c]hange rates for commercial transactions may vary from the official exchange rate." Remand Results at 4. ITA concluded, however, that in light of the contradictory information collected, it would accept the rate certified by the N.Y.Fed as the best information available of the actual dollar-rial exchange rate used in Iran for commercial transactions. ITA stated that although it had collected information indicating that the official rate may not have been used in all foreign exchange transactions, it had "absolutely no information to indicate what rate pistachio producers can actually receive, other than the official exchange rate, for any dollars that they exchange in Iran." Remand Results at 9.[6]

---

**5.** It is unclear whether Iranian banks currently exchange currency at the official rate. *See* Remand Results at 5 n. 1.

**6.** Plaintiffs argue that "defendant's attempt to buttress its determination by pointing to the lack of exchange rate information provided by the respondent is unconvincing" in light of the fact that ITA did not attempt to solicit exchange rate information from the respondent on remand. Plaintiffs' Brief at 12–13.

The court does not find it unreasonable for ITA not to have solicited information from respondent during its remand investigation given the uncooperative nature of respondent during the investigation in chief. After respondent indicated in its questionnaire response that it was not directly involved in the export of pistachios to the United States, PR 24, at 2, ITA requested that it determine through direct inquiry which of its customers exported the subject merchandise to the United States, and forward question-

The court finds ITA's determination in this regard to be supported by substantial evidence and in accordance with law. The information submitted by plaintiffs, while indicating the existence of alternative exchange rates, does not establish that any of these alternative rates were actually available to, and used by, exporters or producers of in-shell pistachios during the period of investigation.[7] Thus, although ITA was "not clear" as to whether the official rate "reflects the actual transactional experience of the producers and exporters in this case," Remand Results at 10, the alternative rates suggested by plaintiffs were not shown to be any more relevant to the transactions at issue. Under these circumstances, the court will not require ITA to utilize a rate more favorable to respondent as best information available in making its less than fair value determination.

Accordingly, the court affirms ITA's determination.

naires to such exporters. ITA informed respondent that if this information was not timely received it would be forced to use the best information available in arriving at its determination. PR 29. ITA never received the requested information. Respondents are not permitted to pick and choose among ITA's requests. Thus, ITA properly refrained from sending further requests to the respondent. Plaintiffs do not challenge directly ITA's use of best information available.

7. The affidavits of the six exporters of pistachios submitted by plaintiffs are the only evidence of record indicating an exchange rate that was actually used by pistachio exporters. Remand Doc. No. 3. As defendant notes, however, it is not clear from the record whether these exporters are in any way representative of other pistachio exporters, and particularly the exporters involved in the transactions at issue. As with the other evidence submitted by plaintiffs, these affidavits only establish that alternative exchange arrangements were available.

In any event, the affidavits do not support plaintiffs' position that exporters converted foreign exchange at the free market rate. They also do not establish that pistachio exporters converted foreign currency at a rate of roughly 400 rials to the dollar, as suggested by plaintiffs in the alternative. The affidavits state only that certain pistachio exporters exchanged dollar export earnings at Iranian banks at a rate of between 83 and 92 rials to the dollar and received an additional "preference"—the wariznameh—from importers, valued somewhere between 240 and 360 rials to the dollar. As ITA notes in its remand results, it has never received any verifiable information on this program from the Iranian government. Remand Results at 7. *See Roasted In–Shell Pistachios from Iran,* 51 Fed.Reg. 35,679, 35,680 (Oct. 8. 1986) (On the basis of best information available, wariznameh program determined to confer countervailable subsidy). It was, therefore, not possible for the agency to determine whether this "preference" creates a new exchange rate for those who receive it, and if so what that exchange rate would be, or whether it is more in the nature of a pure export subsidy. Remand Results at 7.